# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Northwest Title Agency, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Minnesota Department of Commerce, and Michael Rothman, Dennis D. Ahlers, and Jason Broberg, individually, <br><br> Defendants. | Case No. 15-cv-3220 (MJD/HB) <br><br><br> **REPORT AND RECOMMENDATION** |

Wayne B. Holstad and Frederic W. Knaak, Holstad & Knaak PLC, 4501 Allendale Drive, St. Paul, MN 55127, for Northwest Title Agency, Inc.

Sarah L. Krans, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, St. Paul, Minnesota 55101, for Minnesota Department of Commerce, and Michael Rothman, Dennis D. Ahlers, and Jason Broberg, individually

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendants Minnesota Department of Commerce, Michael Rothman, Dennis D. Ahlers, and Jason Broberg's Motion to Dismiss [Doc. No. 11]. The matter has been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a) [Doc. No. 16]. For the reasons set forth below, the Court recommends granting Defendants' motion to dismiss.

## I.      The Amended Complaint

Plaintiff Northwest Title Agency initiated this action by filing a complaint on August 5, 2015.  (Compl. [Doc. No. 1].)  Plaintiff then filed an Amended Complaint on September 9, 2015.  (Am. Compl. [Doc. No. 8].)  Plaintiff alleges that Defendants violated its civil rights based on several proceedings that resulted in the loss of Plaintiff's insurance license, and it sues pursuant to 42 U.S.C. § 1983.  Plaintiff demands both injunctive and monetary relief.

### A.      Factual Allegations

The relevant facts, as alleged in the Amended Complaint, are as follows.  Plaintiff is a Minnesota corporation and was a licensed title insurance producer from 2007 until 2012.  (Am. Compl. ¶ 4.)  On December 29, 2006, Wayne B. Holstad, PLC, a Minneapolis law firm, purchased Plaintiff.  (Am. Compl. ¶ 10.)  From December 19, 2011, until December 23, 2011, Plaintiff conducted closings pursuant to title insurance commitments issued by H. Alan Kantrud on behalf of Old Republic Title Insurance Company ("Old Republic").  (Am. Compl. ¶ 11.)  Kantrud was a Minnesota attorney and a licensed title insurance agent with an agency agreement with Old Republic.  (Am. Compl. ¶ 11.)  Old Republic then terminated its contractual agreement with Kantrud, and the closings ceased.  (Am. Compl. ¶ 11.)  Plaintiff states no closings were conducted by it and Kantrud after the termination by Old Republic.  (Am. Compl. ¶ 11.)  On information and belief, Plaintiff states all of the pending transactions were also closed by Kantrud and Old Republic without any involvement by Plaintiff.  (Am. Compl. ¶ 11.)

Around December 26, 2011, the Minnesota Department of Commerce ("Department") commenced an investigation of Plaintiff based on anonymous information that Plaintiff was conducting closings and issuing title insurance commitments without a title insurance license. (Am. Compl. ¶ 12.) Michael Rothman was the Commissioner of the Department at that time. (Am. Compl. ¶ 3.) Jason Broberg, an investigator with the Department, conducted numerous interviews and on-site inspections. (Am. Compl. ¶ 13.) In connection with the investigation, a Tennessen Warning[1] was served upon Plaintiff. (Am. Compl. ¶ 13.) Plaintiff avers that documents that were not identified in or relevant to the Tennessen Warning were seized without consent. (Am. Compl. ¶ 13.) Plaintiff states some of those documents were not used in any actual transactions, but were samples and templates. (Am. Compl. ¶ 14.)

The Department used these documents in an administrative hearing. Plaintiff objected to the entry of the seized documents as hearsay. (Am. Compl. ¶ 13.) Plaintiff also objected to the testimony of Broberg as hearsay, where his testimony attempted to establish that the content of the documents violated a contractual agreement between Kantrud and Old Republic, who were not present to testify. (Am. Compl. ¶ 15.) During the hearing, Plaintiff's counsel also argued Plaintiff was exempt from licensing under Minnesota's closing agent licensing statute because attorneys are specifically exempt from licensing. (Am. Compl. ¶ 17.)

---

[1] The Minnesota Government Data Practices Act requires that individuals receive a Tennessen Warning informing them of their rights before an agency asks for nonpublic data. *See* Minn. Stat. § 13.04.

After the hearing, the Department issued an Order to Show Cause suspending Plaintiff's title insurance producer license, and also sought a retroactive revocation of its license and monetary sanctions.  (Am. Compl. ¶ 18.)  On October 31, 2012, that license expired, and Plaintiff did not renew it.  (Am. Compl. ¶ 19.)  Then, on December 5, 2012, Plaintiff's motion to dismiss the charges was denied.  (Am. Compl. ¶ 20.)  The administrative agency held further hearings on February 20, 2013, and March 1, 2013, regarding additional charges.  (Am. Compl. ¶ 21.)  The Administrative Law Judge (ALJ) issued Findings of Fact, Conclusions of Law and Order and Memorandum on April 16, 2013, finding Plaintiff violated Minnesota's closing agent licensing statute on two occasions and the title insurance licensing statute on two occasions.  (Am. Compl. ¶ 22.)  The ALJ also found Plaintiff failed to report a violation of a Kansas statute.  (Am. Compl. ¶ 22.)  On August 5, 2013, Dennis Ahlers, Deputy Insurance Commissioner for the Department, issued an opinion and order sanctioning Plaintiff by imposing a $20,000 monetary fine and revoking Plaintiff's title insurance producer license retroactively for two years.  (Am. Compl. ¶ 23.)  Plaintiff appealed to the Minnesota Court of Appeals, which denied that appeal on May 19, 2014.  (Am. Compl. ¶ 24.)  Plaintiff filed a Petition for a Writ of Certiorari to the Minnesota Supreme Court, but that court denied the petition.  (Am. Compl. ¶ 27.)  This action followed.

### B.    Plaintiff's Claims

Plaintiff asserts Defendants are liable to it under 42 U.S.C. § 1983 based on several alleged violations of Plaintiff's procedural due process rights.  First, Plaintiff argues it was denied due process because the Department did not have constitutional or

statutory authority to interpret the closing agent licensing statute during the adjudicatory proceeding, and the Court of Appeals' interpretation applying that statute to Plaintiff was vague and arbitrary.  Plaintiff also contends Defendants' application of Minnesota's real estate broker statute to closing agents was improper under the rules of statutory construction, and Ahlers, under color of state law, did not interpret or offer any legal explanation in response to Plaintiff's argument it was relying on a statutory exception to licensing for attorneys.  (Am. Compl. ¶¶ 28-37.)

Second, Plaintiff claims Defendants violated its right to procedural due process by denying it the right to confront witnesses.  Specifically, Plaintiff claims that because neither Kantrud nor a representative from Old Republic was called to testify at the hearing, Plaintiff was denied the opportunity to cross-examine them in connection with the documents the Department used against Plaintiff at the administrative hearing.  (Am. Compl. ¶¶ 38-42.)

Finally, Plaintiff claims its due process rights were violated because the documents used at the hearing by the Department and relied upon by the ALJ were the product of an unlawful search and seizure and therefore should not have been admitted. Plaintiff argues the Tennessen Warning was not sufficiently specific, and Broberg unlawfully entered a private office not identified as an area to be searched and seized documents that were not relevant to the investigation.  (Am. Compl. ¶¶ 43-49.)

Based on these alleged violations, Plaintiff sues the Department, and sues the remaining Defendants individually and in their official capacities.  (Am. Compl. ¶ 51.) Plaintiff claims that "[b]ecause of the misapplication of the statutes and the continuing

damage caused by the Order against the Plaintiff made in violation  of its constitutional

rights, the Plaintiff has been unable to conduct business and will continue to be deprived

of its business unless granted the relief herein requested." (*Id.*)  Plaintiff further alleges

that it has "suffered loss of revenue, loss of business relationships, and loss of contracts."

(*Id.* at ¶ 52.)  Plaintiff requests that the Court enter a declaratory judgment declaring

Defendants' sanctioning of Plaintiff to be illegal and unconstitutional.  Plaintiff also

requests the Court to enter a preliminary and permanent injunction prohibiting

Defendants from enforcing any rules or regulations against Plaintiff regarding its actions

after the nonrenewal of its title insurance producer license.  Finally, Plaintiff requests

compensatory damages, reasonable costs, and reasonable attorney's fees pursuant to

42 U.S.C. § 1988.  (*Id.* at pp. 14-15.)

On September 25, 2015, Defendants filed a motion to dismiss the Amended

Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Defendants argue the Court lacks jurisdiction under the *Rooker-Feldman* doctrine

because Plaintiff seeks to have this Court invalidate a state court judgment.  Defendants

also argue there is no jurisdiction because Defendants are immune from suit and cannot

be sued under § 1983.  Defendants also argue Plaintiff has failed to state any claim for

which relief can be granted under 12(b)(6) because its claims are barred by res judicata

and collateral estoppel.  Finally, Defendants argue Plaintiff's claims fail as a matter of

law.

## II.      Discussion

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a complaint for lack of subject matter jurisdiction.  In evaluating a motion brought on this ground, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

By contrast, on a motion to dismiss brought pursuant to Rule 12(b)(6), "a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant." *Wong v. Minn. Dep't. of Human Servs.*, Civ. No. 13-3378 (DWF/JSM), 2014 WL 4796464, at *3 (D. Minn. Sept. 26, 2014) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A.      Matters Outside the Pleadings

As an initial matter, Plaintiff argues the motion to dismiss should be converted into a motion for summary judgment because Defendants rely in part on evidence outside

the pleadings.  Defendants submitted five exhibits in support of their motion: the

September 4, 2012, Notice of and Order for Hearing, Order for Summary Suspension,

Order to Show Cause and Statement of Charges filed in *In re Resident Agency License of*

*Northwest Title Agency, Inc.* in the State of Minnesota, Office of Administrative

Hearings, for the Minnesota Department of Commerce, Docket No. 2-1004-23080; the

April 16, 2013, Findings of Fact, Conclusions and Recommendation filed in the same

administrative case; the August 5, 2013, Commissioner of Commerce's Findings of Fact,

Conclusions of Law and Order filed in the same administrative case; the Minnesota Court

of Appeals decision in *In re Resident Agency License of Northwest Title Agency, Inc.*,

Court File No. A13-1643; and the August 5, 2014, Minnesota Supreme Court order

denying the petition for review in *In re Resident Agency License of Northwest Title*

*Agency, Inc.*, Court File No. A13-1643.  (Krans Aff. Exs. 1-5 [Doc. No. 14].)  Therefore,

the Court must first address which of those materials, if any, may be considered in

connection with the motion to dismiss as currently constituted.

When considering a Rule 12(b)(1) motion, a district court may take account of

matters outside the pleadings.  *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 742 (8th Cir. 1980).

Thus, the courts do not convert motions to dismiss brought pursuant to Rule 12(b)(1) to

summary judgment motions based on the presence of outside evidence.  *Osborn*,

918 F.2d at 729-30.

On the other hand, a court generally may not consider matters outside the

pleadings in assessing the sufficiency of a complaint on a Rule 12(b)(6) motion.  *Porous*

*Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).  A court may make

8

exceptions to this rule, however, for "matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." *Wong*, 2014 WL 4796464, at *3.

All five of the exhibits submitted and relied upon by Defendants are part of the public record.  Further, all five exhibits are referenced and discussed in the Amended Complaint.  The Court therefore concludes that it may rely on these exhibits in considering the motion to dismiss either under Rule 12(b)(1) or under Rule 12(b)(6).

**B.     The *Rooker-Feldman* Doctrine**

Defendants argue this Court lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine because Plaintiff is requesting this Court overrule legal conclusions reached by the Minnesota Court of Appeals.  Under the *Rooker-Feldman* doctrine, litigants may not bring suit in federal district court "complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  Generally, state appellate courts review state-court decisions, with any subsequent federal review limited to the United States Supreme Court under 28 U.S.C. § 1257.  Thus, "appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the United States Supreme Court]." *Exxon Mobil Corp.*, 544 U.S. at 283.  In other words, with the exception of habeas corpus petitions, the federal district courts lack subject matter jurisdiction to review state-court rulings. *Id.* at 292 n.8.

The doctrine applies not only to a case styled as a direct appeal, but also to attempts to litigate claims that may be different but are nevertheless "inextricably intertwined" with the state-court judgment, *District of Col. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983).

> Under the *Feldman* doctrine, "the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongfully decided the issues before it.  Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment."

*Keene Corp. v. Cass*, 908 F.2d 293, 296-97 (8th Cir. 1990) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

In its 2005 *Exxon* decision, the Supreme Court limited and clarified *Rooker-Feldman,* emphasizing that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine . . . ." *Exxon Mobil Corp.*, 544 U.S. at 284.  The Court noted that there are some circumstances in which a federal court may exercise jurisdiction when a party attempts to litigate in federal court a matter previously litigated in state court.  *Id.* at 293.  For example, "[i]f a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"  *Id.* (quoting *GASH Assocs. v. Rosemount*, 995 F.2d 726, 728 (7th Cir. 1993)).

Since *Exxon*, the Eighth Circuit has explained that a district court "is not deprived of jurisdiction over every case in which a plaintiff seeks a result different from the one it

10

obtained in state court.  Rather, *Rooker-Feldman* is implicated in that subset of cases

where the losing party in a state court action subsequently complains about that judgment

and seeks review and rejection of it."  *Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc.*, 487 F.3d

1154, 1157 (8th Cir. 2007) (internal citations omitted).  Thus,

> [T]here are four requirements for the application of the *Rooker-Feldman*
> doctrine: (1) the federal court plaintiff must have lost in state court, (2) the
> plaintiff must complain of injuries caused by a state court judgment, (3) the
> plaintiff must invite district court review and rejection of that judgment,
> and (4) the state court judgment must have been rendered before the district
> court proceedings commenced.

> *Christ's Household of Faith v. Ramsey Cty.*, 618 F. Supp. 2d 1040, 1044

(D. Minn. 2009) (citing *Skit Int'l*, 487 F.3d at 1156-57).

Courts in this district have differentiated between cases in which independent

claims form the basis for the complaint and cases seeking to address an injury caused by

the state court decision itself, holding *Rooker-Feldman* bars only the latter.  *See Peet v.

Associated Bank, N.A. Mendota Heights*, No. 11-cv-2544 (SRN/JJG), 2012 WL 7589401,

at *4 (D. Minn. July 20, 2012), *R. & R. adopted*, 2013 WL 717349 (D. Minn. Feb. 27,

2013), *aff'd*, 556 F. App'x 546 (8th Cir. 2014); *Milliman v. Cty. of Stearns*, No. 05-cv-

2993 (JRT/RLE), 2006 WL 2583170, at *12-13 (D. Minn. Sept. 7, 2006).  But while

*Rooker-Feldman* does not bar claims arising from sources outside the state court

judgment, it bars "a claim seeking redress for an injury caused by the state court decision

itself-even if the basis of the claim was not asserted to the state court."  *Milliman*,

2006 WL 2583170, at *13.  The state and federal claims need not be identical and the

federal action may be construed as a prohibited appeal essentially whenever the federal

relief can only be predicated upon the determination that the state-court decision was wrong. *Lemonds v. St. Louis Cty.*, 222 F.3d 488, 493 (8th Cir. 2000) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987)).   The Eighth Circuit has specifically cautioned that an unsuccessful state court litigant cannot gain victory by filing a civil rights action in federal court.  *Dodson v. Univ. of Ark. For Med. Scis.*, 601 F.3d 750, 754 (8th Cir. 2010). Thus, a federal district court may not "exercis[e] jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court." *Lemonds*, 222 F.3d at 492–93.

That being said, the Eighth Circuit has held that "the *Rooker-Feldman* doctrine does not bar federal claims brought in federal court when a state court previously presented with the same claims declined to reach their merits."  *Simes*, 354 F.3d at 830. In *Simes*, the plaintiffs had attempted to raise their federal claims before the Arkansas Supreme Court in a petition for a writ of certiorari.  *Id.* at 827.  The state supreme court not only declined to address the federal claims, but ordered the parties to confine their briefs to issues of state law.  *Id.* at 828.  The Eighth Circuit concluded under those circumstances that the plaintiffs' claims were not barred by *Rooker-Feldman*.  *Id.* at 830.

The Eighth Circuit in *Simes* noted, however, that the state court "need not undertake extensive analysis of every federal claim before it, regardless of merit, for *Rooker-Feldman* to bar a later federal suit."  *Id.*  On the contrary, the state court "need only indicate it has considered, reached the merits, and rejected the federal claims in order for that doctrine to apply."  *Id.*

Furthermore, the Eighth Circuit has held that the exception carved out by *Simes* does not apply when federal claims could have been, but were not, raised in the state court action.  In *Prince v. Arkansas Bd. of Examiners in Psychology*, 380 F.3d 337 (8th Cir. 2004), the defendant revoked the plaintiff psychologist's license.  *Id.* at 339.  The psychologist had the option of challenging the board's decision in state or federal court. *Id.* at 340.  He chose state court, but then voluntarily dismissed his state court action with prejudice and subsequently filed a suit in federal court alleging § 1983 claims.  *Id.* at 339. The Eighth Circuit noted that under Arkansas law, a dismissal with prejudice is "as conclusive of the rights of the parties as if there were an adverse judgment as to the plaintiff after a trial."  *Id.* at 341 (citation omitted).  Accordingly, the court held that *Rooker-Feldman* barred the psychologist's § 1983 claims, stating that because he "could have raised all of his constitutional challenges to the Board's application of its regulations in his state court case, . . . the exception to the doctrine we recognized in *Simes* does not apply here."  *Id.* at 341-42; *see also Phillips v. Minnesota*, No. 13-cv-1575 (DWF/JJK), 2014 WL 1608360, at *5 (D. Minn. Apr. 21, 2014) *aff'd*, 588 F. App'x 516 (8th Cir. 2015) ("a party 'cannot be allowed to escape *Rooker-Feldman* by raising a new constitutional theory in federal court'" (quoting *Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir. 1992))).

Plaintiff's responsive brief did not dispute that the basic requirements for the application of *Rooker-Feldman* have been met.  Plaintiff (1) lost in state court; (2) is complaining of injuries caused by a state court judgment (i.e., the judgment upholding the Department's revocation of Plaintiff's title insurance license and imposition of sanctions

13

and penalties) that was (3) rendered before these proceedings commenced; and (4) is asking this Court to review and overturn that judgment (i.e., declare Defendants' actions in sanctioning the Plaintiff "illegal and unconstitutional," award damages for its loss of business, and enjoin Defendants from enforcing any rules or regulations against Plaintiff.  In fact, Plaintiff did not address *Rooker-Feldman* at all in its responsive brief. At the hearing on this Motion, however, Plaintiff argued for the first time that, in view of the Eighth Circuit's decision in *Simes*, *Rooker-Feldman* does not deprive this Court of jurisdiction because the Minnesota Court of Appeals did not address all of Plaintiff's federal constitutional claims in its written opinion.[2]  The Court will consider that argument as to each of the three claims in turn.

Plaintiff's first claim is that it was deprived of its procedural due process rights under the Fourteenth Amendment because the Department did not have the authority to interpret the closing agent statute in an adjudicatory proceeding.  (Am. Compl at ¶ 37.) As to that claim, the Court finds it need not address *Rooker-Feldman* at all because the claim is moot, and Plaintiff therefore lacks standing.  Under Article III of the United States Constitution, federal courts may adjudicate only actual cases or controversies. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  In such cases, "a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely

---

[2] This argument should have been, but was not, raised in Plaintiff's responsive memorandum [Doc. No. 18].  The Court ordered the parties to submit post-hearing letters addressing whether the exception to the *Rooker-Feldman* doctrine set forth in the *Simes* case applies [Doc. No. 24].  The Court considered the letters the parties submitted in preparing this Report and Recommendation [Doc. Nos. 25, 27].

to be redressed by a favorable judicial decision."[3]  *Id.*  In this case, Plaintiff alleges the Department's interpretation was incorrect, and that in any event it did not have authority to interpret the statute under which it sanctioned Plaintiff in the course of an administrative hearing rather than through its rule-making process.  But in its opinion, the Minnesota Court of Appeals interpreted that statute for itself, using principles of statutory construction, and arrived at the same result as the Department.  (Krans Aff. Ex. 4 at 10-12 (Court of Appeals Dec.) [Doc. No 14-4].)  The court thus affirmed the Commissioner's determination that Plaintiff acted as a closing agent without a valid license.  (*Id.* at 12.)  This Court cannot redress Plaintiff's injuries under a new interpretation.  As the Supreme Court has stated, "[t]he construction given to a state statute by the state courts is binding upon federal courts."  *Albertson v. Millard*, 345 U.S. 242, 244 (1953).  Even if this Court agreed that the Department was unconstitutionally acting outside of its authority in interpreting the statute, the Minnesota Court of Appeals clearly was not, and this Court cannot redress any injury under this claim.

Further, the circumstances of this case do not meet the exception under which a party can proceed without a personal and redressable stake in the litigation, i.e., where "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again."  *Lewis*, 494 U.S. at 481

---

[3] Although neither party raised the issue, "[s]tanding [] is a jurisdictional requirement, and thus 'can be raised by the court sua sponte at any time during the litigation.'"  *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1156 (8th Cir. 2008) (quoting *Delorme v. United States*, 354 F.3d 810, 815 (8th Cir. 2004)).

(citations omitted).  Even if it were reasonable to expect that Plaintiff may someday be subjected to another administrative hearing in which the Department interprets another regulatory statute, the duration would not be too short, and Plaintiff could appeal the Department's interpretation through the appropriate channels.  Accordingly, Plaintiff lacks standing, and the Court recommends that this claim be dismissed for lack of subject matter jurisdiction.

To the extent Paragraph 37 of Plaintiff's Amended Complaint may be read as also alleging that the statute itself, as interpreted by the Court of Appeals, is unconstitutionally vague, it is not at all clear from a review of Plaintiff's brief to the Court of Appeals that such an argument was made to that court.  (Holstad Aff. Ex. G (Appellants' Br.) [Doc. No. 20-3].)  To the extent it was, however, it was necessarily rejected when the Court of Appeals interpreted the statute for itself, concluded that Plaintiff's proposed interpretation "contradicts the plain language of the statute," and upheld the Department's decision below.  (Krans Aff. Ex. 4 at 12.)  *Rooker-Feldman* would therefore deprive this Court of subject matter jurisdiction over any collateral challenge to that holding.

Plaintiff's second claim is that exhibits used at the hearing resulted from a search and seizure that violated Plaintiff's Fourteenth Amendment rights.  In its brief to the Court of Appeals, Plaintiff argued the "exhibits were seized in violation of [Plaintiff's] constitutional rights."  (Holstad Aff. Ex. G at 11.)  In connection with that argument, Plaintiff challenged the content of the Tennessen Warning and the scope of the search, and cited the Fourth and Fourteenth Amendments to the United States Constitution and *See v. City of Seattle*, 387 U.S. 541 (1967), which analyzed the constitutionality of a

search of a business under those Amendments.  Plaintiff did not cite the Minnesota

Constitution or any case interpreting it.  (*Id.* at 6, 11.)  In its opinion, the Minnesota Court

of Appeals explicitly addressed Plaintiff's argument that "state agents obtained evidence

against [it] in violation of [its] constitutional rights."  (Krans Aff. Ex. 4 at 5.)  The court

held "the department properly obtained the documents," and "[n]o constitutional

violations occurred."  (*Id.* at 5-6.)  While Plaintiff argues that "[e]ither the Minnesota

Court of Appeals misinterpreted the plaintiff's argument or it misinterpreted *See v. City

of Seattle*," (Letter at 3 [Doc. No. 25]), that does not mean the court failed to address

Plaintiff's argument; it only means the court did not choose to adopt it.  As the Eighth

Circuit noted, the state court "need only indicate it has considered, reached the merits,

and rejected the federal claims in order for [*Rooker-Feldman*] to apply."  *Simes*, 354 F.3d

at 830.  Accordingly, *Rooker-Feldman* bars consideration by this Court of Plaintiff's

second claim.

    Plaintiff characterizes its third constitutional claim as a "violation of the Plaintiff's

Sixth Amendment right to confront witnesses whose testimony forms the basis of

sanctions against the Plaintiff."  (Pl.'s Mem. Opp'n at 3 [Doc. No. 18].)[4]  Plaintiff claims

that the Court of Appeals failed to address this argument.  Defendants contend Plaintiff

did not adequately raise it, but that, in any event, the Court of Appeals necessarily

rejected it when it found that the evidence had been properly admitted.

_____

[4] The Court notes that the Sixth Amendment to the United States Constitution only
speaks to criminal proceedings.  To the extent there is a right to an opportunity to
confront and cross-examine witnesses in state civil proceedings, it is encompassed within
the right to procedural due process under the Fourteenth Amendments. *See Goldberg v.
Kelly*, 397 U.S. 254, 269 (1970).

In the Statement of Issues in its brief to the Court of Appeals, Plaintiff offered the

following description of the issue it sought to raise regarding the admissibility of exhibits

used against it at the hearing:

> 1.  ARE THE FINDINGS OF VIOLATIONS OF THE INSURANCE
>     LAWS SUPPORTED BY ANY ADMISSIBLE EVIDENCE?
>
> **How raised:** Appellants objected to the Exhibits that supported the
> Administrative law Judge's Findings of Fact on the
> grounds that the documents were products of an illegal
> search and seizure and that the documents were not
> probative as the documents were not used in any actual
> real estate transaction.
>
> **Ruling:** The documents were admitted over Appellant's objections.
>
> **Authority:** U.S. Const. Amend. 4, 5, 6 and 14.

(Holstad Aff. Ex. G at 1.)

In the body of the brief, under the subheading "The Exhibits Related to the

Alleged Insurance Violations Should Have Been Excluded on Constitutional Grounds,"

Plaintiff discussed its search and seizure challenge, then went on to the following

argument:

> The Appellants were also deprived of their right to confront the witnesses whose
> 'testimony' was used against [it] even though they never actually testified.
> Kantrud was not asked to testify even though he was the title agent whose
> documents were questioned.  No representatives from [Old Republic], both those
> who approved of the documents and those who disapproved, were ever called.
> Instead, the investigator testified for them.  Although testifying that the documents
> were deceptive, misleading, illegal and fraudulent, the parties who drafted the
> documents were never called to explain them.  The Department merely accused
> [Plaintiff] of the deception because its name was on the documents.

(*Id.* at 10-11.)  This paragraph was the sum total of Plaintiff's argument to the Court of Appeals that the exhibits used against it at the hearing should have been excluded because the individuals who had authored or approved them were not called to testify.

In its opinion, the Minnesota Court of Appeals referred generally to Plaintiff's argument "that the administrative law judge erred by admitting inadmissible evidence at the hearing."  (Krans Aff. Ex. 4 at 6.)  The court looked at the applicable provisions of Minnesota's Administrative Procedure Act and the rules governing administrative proceedings.  Concluding that the "rules of evidence do not strictly apply in administrative proceedings," the court held that the "administrative law judge properly admitted the documents into evidence under Minnesota Statutes section 14.60, subdivision 1, and Minnesota Rule 1400.7300, subpart 1."  (*Id.* at 6-7.)

Plaintiff argues that because the Court of Appeals did not expressly address the Sixth Amendment (which does not apply in any event) or otherwise discuss a constitutional right to confront witnesses, the Eighth Circuit's decision in *Simes* precludes the application of *Rooker-Feldman* to this claim.  Defendants, citing *Prince,* argue that *Simes* does not apply here because Plaintiff did not adequately raise this issue before the Court of Appeals, and therefore cannot now dodge *Rooker-Feldman* on the ground that the court failed to address it.

The Court finds neither *Simes* nor *Prince* to be directly on point.  Unlike *Simes,* the Court of Appeals did not preclude briefing of the issue.  Nor, for that matter, is this case like *Friends of Lake View Sch. Dist. Inc. No. 25 of Phillips Cty. v. Beebe*, 578 F.3d 753, 759 (8th Cir. 2009), in which the plaintiff briefed its Fourteenth Amendment

challenge but the court expressly declined to address it.  But neither is this case on all fours with *Prince*, in which the plaintiff first brought his case in state court and then dismissed it with prejudice, thereby conclusively disposing of any federal constitutional challenges he might have made.  Here, Plaintiff included the Sixth Amendment in a list of four amendments following a statement of the issue that discussed unconstitutional search and seizure but made no mention whatsoever of the right to confront witnesses.  Then, ten pages later, it argued in a single paragraph, devoid of citations to the United States Constitution or to case law, that Plaintiff had been denied the right to confront and cross-examine the authors or approvers of certain exhibits used against it at the hearing.[5]

Plaintiff points out that just because the Court of Appeals found the documents admissible under Minnesota law governing the admissibility of evidence at administrative hearings does not mean it considered whether Plaintiff had been deprived of a right to confront the individuals who authored or approved the documents.  It is true that Confrontation Clause analysis does not necessarily end with whether the challenged testimony was properly admitted under the applicable evidentiary rules.  *Cf. Crawford v. Washington*, 541 U.S. 36, 51 (2004) ("[*E*]*x parte* examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them.").  Thus, it would have been possible for the Court of Appeals to conclude the ALJ properly admitted the documents under the Minnesota statute and rules

---

[5] Plaintiff's argument appears to be that the Department should have called the authors to testify so that Plaintiff could cross-examine them.  Plaintiff did not argue to the Court of Appeals, and does not argue here, that Plaintiff sought  to call and cross-examine the authors of the documents itself but was denied the opportunity to do so.  *See* Minn. Stat. § 14.51 (stating ALJ may issue a subpoena upon written request of a party).

governing evidence at administrative hearings without necessarily confronting (so to speak) whether Plaintiff's procedural due process right was violated because the authors of the documents did not testify.

But Plaintiff's one-paragraph discussion of this issue in its brief to the Court of Appeals did not cite authority or even mention procedural due process (or, for that matter, the Sixth Amendment) as the basis for its challenge, let alone set forth a framework for the constitutional analysis it wished the Court of Appeals to conduct.  For *Rooker-Feldman* to apply, the state court did not need to "undertake extensive analysis of every federal claim before it, regardless of merit."  Rather, it needed only to "indicate it has considered, reached the merits, and rejected the federal claims." *Simes*, 354 F.3d at 830. In holding the documents were properly admitted, the Court of Appeals necessarily rejected the only argument Plaintiff made – that they should have been excluded because the author was not present for cross-examination.  The Court concludes, therefore, that to the limited extent Plaintiff identified this issue, the Court of Appeals addressed it. Accordingly, the Court recommends that this claim, as well, be dismissed under *Rooker-Feldman* for lack of subject matter jurisdiction.

## C.    Res Judicata

Defendants next argue Plaintiff's claims are barred by res judicata,[6] and that the Court should therefore dismiss the Amended Complaint pursuant to Federal Rule of Civil

---

[6] The *Rooker-Feldman* doctrine and res judicata "often overlap in their practical effects, [but] they rest on contrasting foundations and serve distinct purposes." *Lemonds v. St. Louis Cty.*, 222 F.3d 488, 495 (8th Cir. 2000).  "[W]hereas res judicata is largely a matter of common law and involves the impropriety of permitting parties to have 'two bites at

Procedure 12(b)(6).  In ascertaining the preclusive effect of a judgment, "[t]he law of the

forum that rendered the first judgment controls the res judicata analysis." *St. Jude Med.*

*S. C., Inc. v. Cormier*, 745 F.3d 325, 327 (8th Cir. 2014) (quotations omitted).  Under

Minnesota law, res judicata applies when "(1) the earlier claim involved the same set of

factual circumstances; (2) the earlier claim involved the same parties or their privies;

(3) there was a final judgment on the merits; (4) the estopped party had a full and fair

opportunity to litigate the matter." *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840

(Minn. 2004).  Moreover, "[r]es judicata applies not only to all claims actually litigated,

but to all claims that could have been litigated in the earlier action." *Id.*[7]

Turning to the first element, the federal suit involves the same set of factual

circumstances as those raised in the state suit, namely, the investigation and subsequent

decision by the Department that Plaintiff had violated several Minnesota statutes

governing closing agents and title insurance producers, and imposing penalties and

sanctions as a result thereof.  The aspects of the Department's investigation and decision-

making that Plaintiff challenges in this action are the same as those it challenged before

the Minnesota appellate courts.  None of the facts upon which Plaintiff relies in this

action occurred after the state court proceedings.  Although Plaintiff states conclusorily

that res judicata "doesn't apply because this isn't the same case" (Pl.'s Mem. Opp'n Mot.

_____

the apple,' *Rooker-Feldman* is based squarely on federal law and is concerned with
federalism and the proper delineation of the power of the lower federal courts." *Id.*

[7] That the proceedings below began with an administrative hearing does not preclude the
application of res judicata, which can apply to administrative decisions "when an agency
acts in a judicial or quasi-judicial capacity." *Graham v. Special Sch. Dist. No. 1*, 472
N.W.2d 114, 115-16 (Minn. 1991).  There is no dispute that the Department acted in a
quasi-judicial capacity in this case.

Dismiss at 17 [Doc. No. 18]), it does not anchor that statement to any specific differences in the underlying facts, or identify any claims made here that it could not have litigated below.  The Court concludes that the first element of the res judicata analysis is met.

As to the second element, Plaintiff argues res judicata does not apply because although the Department was a party to the state court proceeding, the individual Defendants in this action were not.  The Court must look, therefore, at whether the earlier claim involved either the same parties or their privies.  *Rucker v. Schmidt*, 768 N.W.2d 408, 412 (Minn. Ct. App. 2009) *aff'd*, 794 N.W.2d 114 (Minn. 2011) (citation omitted). In general, privity "requires a person so identified in interest with another that he represents the same legal right."  *Id.* at 412.  There is no specific definition of privity under Minnesota law, but the concept "expresses the idea that a judgment should also determine the interests of certain non-parties closely connected with the litigation."  *Id.* at 412-13; *see also Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1153 (8th Cir. 2012); *Margo–Kraft Distribs., Inc. v. Minneapolis Gas Co.*, 294 Minn. 274, 200 N.W.2d 45, 47 (1972)).

There is no dispute, of course, that Plaintiff was a party to the original state court action.  Defendants contend that even though the individual Defendants in this case were not parties to the state court suit, as employees they were in privity with the Department. Generally, in a claim against a government employee in his or her official capacity, privity is found to exist between the official and the government entity.  *Milliman*, 2006 WL 2583170, at *20.  Further, "[w]here there is a sufficient identity of interest between a government official and the governmental entity . . . , privity may be found to

exist regardless of the fact that the official has been sued in his personal capacity." *Id.* (citation omitted).

Like the court in *Milliman*, this Court finds the Eighth Circuit decision in *Ruple v. City of Vermillion*, 714 F.2d 860 (8th Cir. 1983), instructive. In that case, a plaintiff commenced a state court action against the city and the city manager after she was fired from her position with the city. *Id.* at 861. After the state court dismissed her action, she commenced a new action in federal court, alleging § 1983 violations against the city, city manager, and new defendants including the mayor and members of the city council. *Id.* at 862. The Eighth Circuit noted the similarities between the two actions, and held that the plaintiff could not "benefit from the fact that some of the parties . . . were nonparties in state court." *Id.* The Eighth Circuit found privity, holding the new defendants were so closely related and their interests were so nearly identical, that it was "fair to treat them as the same parties for purposes of determining the preclusive effect of the state-court judgment." *Id.*

Similarly, here the claims against the Department and the individual Defendants are closely related. Plaintiff's claims are for misconduct during the course of the employees' employment with the Department. The only potential claim against one of the individual Defendants outside of his official employment is Plaintiff's claim that Defendant Broberg exceeded any authority granted by the Tennessen Warning. In its brief to the Minnesota Court of Appeals, Plaintiff argued that "documents were seized off of a private desk without permission." (Holstad Aff. Ex. G at 11.) Plaintiff notes that "the files requested by the investigator were placed on a credenza only a few feet away,"

but "were never picked up by the investigation." (*Id.*)  Defendant Broberg's interest in this case is therefore nearly identical to that of his employer's interest in the state court case.  The Court finds the individual Defendants, in both their official and their individual capacities, to be in privity with the Department, and this element of res judicata to be satisfied.

Turning to the third element, the Court next considers whether there was a judgment on the merits in the state court action.  A judgment is on the merits when judgment is entered and the time for appeal from that judgment has expired.  *See Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 221 (Minn. 2007).  "A judgment is final when it is entered in the district court and it remains final, despite a pending appeal, until it is reversed, vacated or otherwise modified."  *Id.*  Here, Plaintiff already appealed the prior court decisions in state court.  There is no pending appeal, and the state court judgment is final.  Further, the state court did not dismiss the case on jurisdictional or technical grounds.  The Court thus finds there was a final judgment on the merits.

Finally, the Court must consider whether Plaintiff had a full and fair opportunity to litigate the matter.  Plaintiff claims it did not because the Minnesota Court of Appeals failed to address in its written opinion some of the issues Plaintiff raised.  In analyzing this element, courts consider "whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties."  *State v. Joseph*, 636 N.W.2d 322, 328 (Minn. 2001).  "[A] litigant's disagreement with a legal

ruling does not necessarily mean that the court denied the litigant a full and fair opportunity to litigate a matter." *Id.* at 329.  There is no evidence Plaintiff suffered significant procedural limitations at the Minnesota Court of Appeals.  Plaintiff was not prevented from raising its constitutional claims in state court.  *See* Minn. Stat. §§ 14.63-.69 (allowing appeal of agency decision for determining whether the decision violated constitutional provisions, was in excess of statutory authority, was made upon unlawful procedure, was affected by error of law, was unsupported by substantial evidence, or was arbitrary or capricious).  Res judicata bars these and any claims that could have been litigated.  Plaintiff was represented by counsel in the administrative and state court proceedings.  Plaintiff received an evidentiary hearing.  Plaintiff had the opportunity to appeal the Department's final order, and did so.  Plaintiff appealed to the Minnesota Supreme Court, which denied review.  Finally, Plaintiff had every incentive to fully litigate its claims, and there is no evidence that effective litigation was limited by the relationship of the parties.  That the Court of Appeals did not explicitly address every case or argument that Plaintiff raised or could have raised does not bar the operation of res judicata.  *See Welch v. Citimortgage, Inc.*, No. 13-cv-1388 (JRT/JJK), 2014 WL 1048522, at *4 (D. Minn. Mar. 18, 2014) (rejecting argument that pro se plaintiff did not have a full and fair opportunity to litigate her claims where the first court did not consider her argument that defendants engaged in improper foreclosure practices, because at its core, the argument was that the first court erred, which did not bear on whether she received a full and fair opportunity to litigate her claims).

In sum, the Court finds all four elements have been met, and therefore recommends granting Defendants' Motion to Dismiss with prejudice because Plaintiff's three claims are barred by res judicata.

### D.   Defendants' Other Arguments

Defendants raise other grounds in support of their motion to dismiss.  The Court has already found Plaintiff's claims to be barred on other grounds, and has accordingly recommended dismissal with prejudice of all claims.  The Court will therefore not address Defendants' arguments that the claims are barred by collateral estoppel, that they are entitled to immunity from suit on these claims, and that Plaintiff's Amended Complaint fails to state any claims as a matter of law.

## III.   Recommendation

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Defendants Minnesota Department of Commerce, Michael Rothman, Dennis D. Ahlers, and Jason Broberg's Motion to Dismiss [Doc. No. 11] be **GRANTED** and that Plaintiff's Amended Complaint be **DISMISSED WITH PREJUDICE**; and

2.   **JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: June 29, 2016                    _s/ Hildy Bowbeer_____
                                        HILDY BOWBEER
                                        United States Magistrate Judge

27

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.